IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KYLE P.,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of Social Security,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER OVERRULING OBJECTIONS TO THE REPORT AND RECOMMENDATION**<br><br>Case No. 2:25-cv-00479<br><br>Judge Tena Campbell<br>Chief Magistrate Judge Cecilia M. Romero |

Plaintiff Kyle P. seeks review of the Commissioner of Social Security's denial of the Plaintiff's claim for disability insurance benefits (DIB) and supplemental security income (SSI). (Compl., ECF No. 2.) On August 10, 2026, Chief Magistrate Judge Cecilia M. Romero issued a Report & Recommendation (R. & R., ECF No. 23) recommending that the court deny the Plaintiff's Motion for Review of Agency Action (ECF No. 15) and affirm the Commissioner's decision. The Plaintiff timely objected, asking that the court not adopt the R. & R. (ECF No. 24.) For reasons discussed below, the court overrules the Plaintiff's objections, adopts the R. & R., and denies the Plaintiff's motion for review of agency action.

**BACKGROUND**

The relevant facts are further detailed in Judge Romero's R. & R., but in short, the Plaintiff alleges that he is disabled due to severe anxiety, depression, and insomnia, and that on November 9, 2022, he filed applications for DIB and SSI. (ECF No. 23 at 1–2; see Certified Admin. Record 63 (Tr.), ECF No. 9.) In assessing his applications, the Administrative Law

Judge (ALJ) handling his case applied the required five-step sequential evaluation process for claims like the Plaintiff's. (ECF No. 23 at 1 (citing Tr. 27–43)); see 20 C.F.R. § 404.1520(a)(4).

The Tenth Circuit summarized what is entailed at each step in Lax v. Astrue. 489 F.3d 1080, 1084 (10th Cir. 2007). As relevant here, at step two, a claimant is required to "show 'that he has a medically severe impairment or combination of impairments.'" Id. (quoting Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)). "At step three, if a claimant can show that the impairment is equivalent to a listed impairment, he is presumed to be disabled and entitled to benefits." Id. (citing Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988)). "If a claimant cannot meet a listing at step three, he continues to step four, which requires [him] to show 'that the impairment or combination of impairments prevents him from performing his past work.'" Id. (quoting Grogan, 399 F.3d at 1261). If a claimant "meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient RFC [residual functional capacity] to perform work in the national economy, given [his] age, education, and work experience." Id. (quoting Hackett v. Barnhart, 395 F.3d 1168, 1171 (10th Cir. 2005)).

Applying this framework, the ALJ concluded that the Plaintiff was "not disabled," and denied the application for disability benefits. (ECF No. 23 at 2 (citing Tr. 29, ECF No. 9); see also Tr. 18–29 (legal framework and analysis).) The Plaintiff sought review from the Appeals Council; it denied his request for review, meaning the ALJ's denial of the Plaintiff's benefits applications stands as the Commissioner's final decision. (ECF No. 15 at 2 (citing 24 U.S.C § 405(g)); see Tr. 1–4, ECF No. 9.)

In seeking review, the Plaintiff asserts that the ALJ made two errors: he "erred in evaluating [the Plaintiff]'s mental impairments at [s]tep [t]hree," and he "erred in using undefined language when crafting [the Plaintiff's RFC]." (ECF No. 15 at 2; see also id. at 6–14.)

Judge Romero assessed these claims of error, as well as the briefs and the record, in the first instance. (ECF No. 23 (reviewing ECF Nos. 15, 21, 22).) As relevant to the Plaintiff's objections, she recommended finding there was neither reversible error in the ALJ's evaluation of the Plaintiff's impairments, (ECF No. 23 at 3–8), nor in the ALJ's use of the term "brief and superficial interaction," the purportedly undefined language, (id. at 10–12).

## LEGAL STANDARDS

After receiving a report and recommendation from a United States Magistrate Judge on a dispositive motion, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); see also Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). The reviewing judge may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Accordingly, this court reviews the findings and recommendations that the Plaintiff has objected to de novo.

Under de novo review, "the district court judge, like the magistrate judge, reviews the commissioner's decision 'to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied.'" Youngkin v. Kijakazi, No. 4:20-CV-00099, 2022 WL 4396368, at *1 (D. Utah Sept. 23, 2022) (quoting Lax, 489 F.3d at 1084). The Plaintiff did not object to the standard of review applied by Judge Romero, and as Judge Romero explained and this court agrees, a federal court's scope of review of the Commissioner's final decision is "specific and narrow." (ECF No. 23 at 2.) "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Lax, 489 F.3d at 1084 (cleaned up). "It requires more than a scintilla, but less than

a preponderance." Id. "The court will not reweigh the evidence or substitute its judgment for the commissioner's." Youngkin, 2022 WL 4396368, at *1 (citing Lax, 489 F.3d at 1084). But "[e]ven where [a c]ourt finds that the ALJ has erred in [his] analysis, the [c]ourt will affirm the decision where the error is harmless." Whitten v. Astrue, No. 12-CV-0601, 2013 WL 1461543, at *5 (D. Colo. Apr. 11, 2013) (citing Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004)); see Shinseki v. Sanders, 556 U.S. 396, 409 (2009) (placing burden to show harmful error on party challenging agency determination).

## ANALYSIS

For the reasons discussed below, the Plaintiff's objections to the R. & R. are overruled.

### I. The Plaintiff's Objections Related to Steps Two and Three of the Five Step Analysis.

The Plaintiff first raises the specter of the ALJ having committed error in steps two and three of the five-step sequential evaluation of whether the Plaintiff is disabled. (ECF No. 24 at 2 ("In making required findings at steps two and three….").) The Plaintiff argues that "the ALJ[ failed] to provide a proper evaluation of [the Plaintiff]'s mental impairments," which the Plaintiff says is "particularly problematic in the area of [his] ability to interact with others." (Id. at 3). In the Plaintiff's view, "the ALJ's decision contains no mention at all of the difficulty [the Plaintiff] had sustaining work," and the ALJ's failure to consider all evidence was "legal error [that] is not harmless" because an "ALJ is required to consider all evidence when making [his] evaluation." (Id. at 4). And the Plaintiff objects to the R. & R.'s purported "assert[ion]" that "[t]he ALJ's reliance on part-time work without reconciling the issue of reduced hours, changes in duties, and termination" did "not undermine the ALJ's findings." (Id.) On this basis, the Plaintiff asserts that this court should "decline to accept the [R. & R.] with regard to [the Plaintiff]'s ability to interact with others." (Id.) The court disagrees and overrules this objection.

The court is not persuaded that the factual claim behind this objection—namely, that "the ALJ's decision contains no mention at all of the difficulty [the Plaintiff] had sustaining work," (ECF No. 24 at 4)—is correct. The ALJ expressed familiarity with the Plaintiff's work history and an awareness that his past work for various employers was time-limited—put differently, only sustained for a short time. For example, in the paragraph of the Hearing Decision that analyzed the Plaintiff's ability to interact with others, the ALJ noted that the Plaintiff had "worked at [a hardware store] during the third quarter of 2023 and at [a different hardware store] from at least the fourth quarter of 2021 through the first quarter of 2023 (Exhibit 9D)." (Tr. 22, ECF No. 9; see also id. at 24 (similar).) Later, in undertaking the determination at step four, the ALJ noted that "[t]he [Plaintiff] allege[d] inability to perform substantial gainful activity beginning in September 2021 due to symptoms secondary to depressive disorder and generalized anxiety disorder." (Id. at 24); see Brown v. Barnhart, 470 F. Supp. 2d 1309, 1313 (D. Utah 2006) ("[S]tep four assesses the … residual functional capacity."). The ALJ also noted that "[t]he vocational expert [VE] testified that the requirements to perform the claimant's past relevant work exceed his residual functional capacity. The claimant is unable to meet the skill level, vocational preparation, mental, and social demands of his past relevant work." (Tr. 27–28, ECF No. 9 (citation omitted).)

To the extent the Plaintiff objects that the ALJ's decision "contains no mention at all of the difficulty [the Plaintiff] had sustaining work," (ECF No. 24 at 4), the court disagrees because the portions of the Hearing Decision discussed above establish the contrary. To the extent the Plaintiff objects only that the step two and three analyses were deficient, these same portions also undermine any such objection because the court reads an "ALJ's decision as a whole." Mario J.

G. v. Berryhill, No. 2:17-CV-00269, 2018 WL 4491179, at *3 (D. Utah Sept. 19, 2018), aff'd sub nom. Gutierrez v. Comm'r, SSA, 799 F. App'x 593 (10th Cir. 2020).

The Plaintiff also protests that the R. & R. sanctioned the ALJ "pick[ing] and choos[ing]" among the evidence, and only using "favorable" evidence "while ignoring other evidence" including the difficulties the Plaintiff had sustaining work. (ECF No. 24 at 3 (citation omitted)). The court is unconvinced. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." Clifton v. Chater, 79 F.3d 1007, 1009–10 (10th Cir. 1996). Where, as here, an ALJ cites to particular exhibits, it shows "that the ALJ at least considered the evidence in those exhibits." Kroon v. Colvin, No. 14-CV-02153, 2016 WL 106865, at *7 (D. Colo. Jan. 11, 2016) ("[T]he ALJ's citation to [two specific] Exhibits … indicates that the ALJ at least considered the evidence in those exhibits."); accord Leonard O. v. Bisignano, No. 2:25-CV-00808, 2026 WL 2838161, at *5 (D. Utah Sept. 22, 2026) ("[T]he ALJ cited the hearing exhibits containing the records [the plaintiff] relies on, demonstrating he considered them."). In discussing the Plaintiff's social capabilities and his work history, the ALJ wrote that the Plaintiff "says that he gets along with authority figures 'fairly well when contact is minimal' and does not report that a supervisor has ever fired or laid him off from a job because of problems getting along with others (Exhibit 5E/6-7)." (Tr. 23, ECF No. 9.) In Exhibit 5E, the Plaintiff said he has "severe depression and anxiety that makes it excruciating to function in typical employment." (Id. at 214). The ALJ's citation of that exhibit suffices to show that he considered this evidence, and refutes the Plaintiff's argument that the ALJ ignored evidence that the Plaintiff had difficulties at work.

The Plaintiff also argues that the ALJ needed to not just consider but "reconcil[e]" the Plaintiff's part-time work history with "the issue of reduced hours, changes in duties, and

termination," and that the ALJ's failure to do so was "erroneous," and, further, that the R. & R.'s assertion that this did "not undermine the ALJ's findings" is objectionable. (ECF No. 24 at 4.) This objection is also unavailing. The court struggles to see how a demand that an ALJ expressly "reconcil[e]" various parts of a benefits claimant's history could be anything other than a request to reweigh evidence—which, as Judge Romero correctly pointed out, is not a request that a federal court reviewing the decision of an ALJ can honor because "[w]e may n[ot] reweigh the evidence." Noreja v. Comm'r, SSA, 952 F.3d 1172, 1178 (10th Cir. 2020) (quoting Knight ex rel. P.K. v. Colvin, 756 F.3d 1171, 1175 (10th Cir. 2014)).

In any event, assessing the record de novo, the court agrees that the "Plaintiff's termination and decreased hours do not undermine the ALJ's reasoning" that the Plaintiff's work history is evidence of his ability to interact with others. (ECF No. 23 at 7.) The Plaintiff says the fact that he was "only able to work one month in 2023, before he was let go due to missing work" is "[n]otably missing" from the ALJ's evaluation of the Plaintiff's ability to interact with others. (ECF No. 24 at 3 (citation omitted).) But this absence does not undermine the ALJ's evaluation, because, as the Plaintiff himself indicated and the ALJ pointed out, the Plaintiff has never "been fired or laid off from a job because of problems getting along with other people." (Tr. 219, ECF No. 9; Tr. 23 (citing Tr. 219).) The Plaintiff also complains that the ALJ did not mention the Plaintiff's "previous employment that had started as full-time, supervisory work, but that resulted in lessened duties and fewer hours," and refers this court to pages 42 and 43 of the Certified Administrative Record as support. (ECF No. 24 at 3 (citing Tr. 42–43, ECF No. 9).) But those pages of the hearing before the ALJ establish that in the Plaintiff's previous role, he "primarily helped customers around the store -- talked to them about their needs, helped them find product in the store …." (Tr. 42–43, ECF No. 9.) Even assuming the ALJ ignored this

testimony any error would have been harmless; the Plaintiff would not have been prejudiced by the ALJ not considering that material because the testimony at the pages cited by the Plaintiff does not indicate a limited capacity for social interaction. See Shinseki, 556 U.S. at 409 (citation omitted).

## II. The Plaintiff's Objections About the Residual Functional Capacity Evaluation.

The Plaintiff's second objection raises two points related to the ALJ's residual functional capacity (RFC) evaluation and the R. & R.'s treatment of the issue. First, the Plaintiff says the ALJ erred by "failing to provide analysis of the difference between his RFC findings and those of the DDS physician." (ECF No. 24 at 4 (cleaned up).) Second, he says that the ALJ erred "by relying on undefined language." (Id. (cleaned up)). The court disagrees.

The Plaintiff's first argument purports to find daylight between what physicians assessing the Plaintiff said about his limitations in interacting with supervisors and what the ALJ said about the Plaintiff's limitations. Physicians said that the Plaintiff's symptoms include "[s]ocial interaction related symptoms," (Tr. 66, 73, 81, 89, ECF No. 9), that his "ability to accept instructions and respond appropriately to criticism from supervisors" was "[m]oderately [l]imited," (id. at 67, 74, 82, 90), and that his "ability to ask simple questions or request assistance" was "[n]ot [s]ignificantly [l]imited," (id. at 67, 74, 82, 90). Physicians also said that the Plaintiff "would perform best in a setting that does not require frequent or complex interpersonal interactions, but he is capable of occasional, brief, simple interactions with coworkers and the public. He is likely to be sensitive to criticism, but he can accept instruction and occasional correction from supervisors." (Id. at 82, 90). Physicians also observed that, at least on February 14, 2023, the Plaintiff had reported "doing well at work and [was] able to do his job" at a hardware store. (Id. at 71). The ALJ said that "[b]ecause of social limitations, [the

Plaintiff] can occasionally interact with supervisors and can have brief and superficial interaction with co-workers while remaining on task at the workplace; similarly, he can have brief and superficial interaction with the general public." (Id. at 26).

About these assessments, the Plaintiff argues that "despite the acknowledgement of limitations in dealing with others, particularly supervisors, the ALJ then limited [the Plaintiff] to brief and superficial interaction with co-workers and the general public but allowed occasional interaction with supervisors (Tr. 27)." (ECF No. 24 at 5.)[1] Here, the Plaintiff appears to assume, without support, that a limitation to "occasional interaction with supervisors" is not a moderate limitation while a "brief and superficial" limitation is a moderate limitation, and furthermore that the ALJ "reject[ed]" physician opinions about the Plaintiff's abilities by using the "occasional" language in relation to Plaintiff's interaction limitations with supervisors. (See id.)[2] The Plaintiff's argument is unavailing for two reasons. First, physicians used "occasional" to describe the Plaintiff's abilities, so the ALJ's use of the term cannot be the rejection of physician

---

[1] The Plaintiff cites page 27 of the Certified Administrative Record for this point, but the court cannot discern what the relevant passage on page 27 might be.

[2] In objecting to an R. & R., "[a] plaintiff[] must raise specific arguments addressing purported errors in the recommendation." Crocs, Inc. v. Effervescent, Inc., No. 06-CV-00605, 2021 WL 941828, at *3 n.2 (D. Colo. Mar. 11, 2021) (citation omitted) (emphasis added). He must "not reiterate [his] identical arguments hoping to get a different outcome," id. (citation omitted), nor raise issues "for the first time in objections" to the R. & R. because such arguments or claims are "waived," Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996). In objecting, the Plaintiff does not connect his argument that the ALJ erred by "failing to provide analysis of the difference between his RFC findings and those of the DDS physician" to anything specific in the R. & R. Nor did the Plaintiff's initial brief in federal court make an argument about this purported difference. (ECF No. 15 at 12–14; see Pl.'s. Reply, ECF No. 22 at 6–8.) Because of the latter deficiency, this argument is likely waived. But the Plaintiff raised it in his appeal of denial of benefits. (See Tr. 259, ECF No. 9.) So this court will exercise its discretion to consider it, reviewing de novo. See Sampson v. Kane Is Able, Inc., 812 F. App'x 746, 749 (10th Cir. 2020) (observing courts' discretion to review forfeited or waived arguments); cf. Gilmore v. Sicotte, No. 15-CV-00741, 2016 WL 791935, at *1 (D. Colo. Mar. 1, 2016) (absent objection court may review R. & R. under any standard it deems appropriate).

opinion that the Plaintiff asserts it to be. (See Tr. 90, ECF No. 9 ("[The Plaintiff] is capable of occasional, brief, simple interactions with coworkers and the public. He is likely to be sensitive to criticism, but he can accept instruction and occasional correction from supervisors.").) Second, the assumption that "brief and superficial" is—but "occasional" is not—a moderate limitation is conjecture. Moreover, it is conjecture undermined by the record. Physicians used "occasional" to describe the Plaintiff's abilities in relation to co-workers, the public, and supervisors, (id.), so the Plaintiff's attempt to distinguish between these phrases and the ALJ's treatment of the Plaintiff's interaction limitations vis-à-vis his supervisors and others fails.

The Plaintiff also argues that the ALJ committed reversible error by using the phrase "brief and superficial interaction," which the Plaintiff calls undefined. (ECF No. 24 at 5, 7.) But this argument fares no better. As an initial note, apart from the brief harmful error discussion, (id. at 7), the court discerns little difference between the argument the Plaintiff made in his initial briefing, (ECF No. 15 at 12–14; ECF No. 22 at 6–8), and his objection on what appears to be essentially the same ground, (ECF No. 24 at 5–7); Crocs, 2021 WL 941828, at *3 n.2 (citation omitted). Still, assessing the issue de novo, the court arrives at the same result as Judge Romero.

To begin, this court—and more importantly, the Tenth Circuit—have affirmed ALJ decisions that use terms similar to the one the Plaintiff asserts is unacceptable here. (ECF No. 23 at 10–11 & n.1 (collecting cases)); see, e.g., Allen v. Colvin, 669 F. App'x 497, 497 (10th Cir. 2016) ("brief and superficial interactive contact"). To be sure, the acceptability of the at-issue phrase was not the courts' analytical focus in those cases. See, e.g., Allen, 669 F. App'x at 498 (affirming ALJ's finding that the plaintiff "should have only brief and superficial interactive contact with the public," but in the context of an objection that, among other things, "the ALJ failed to account for limitations on concentration, persistence, and pace that he had previously

acknowledged"). It is telling that the Tenth Circuit has not taken issue with similar language in similar contexts. Regardless, this court finds that it was as acceptable for the ALJ to have used the term in the context of this case as it was when other ALJs used similar language.

Further, the court disagrees with the Plaintiff that "remand [to the agency] is necessary" because the "brief and superficial interaction" term is not "defined in the [Dictionary of Occupational Titles (DOT)], explained in the RFC hypothetical, or explained to the [Vocational Expert (VE)], [meaning that] the Court is left to speculate what the ALJ means." (ECF No. 24 at 6 (quoting Darrel A. v. Saul, No. CV CBD-19-2351, 2021 WL 927457, at *9 (D. Md. Mar. 10, 2021)).) Curiously, despite twice providing the court with the above quotation from Darrel A., (ECF No. 15 at 13; ECF No. 24 at 6), and suggesting it is persuasive authority, the Plaintiff distances himself from the requirements it lays out, (see ECF No. 24 at 6 (averring that his "argument is not that every term used by an ALJ has to be clearly defined by the DOT").[3] Instead, the Plaintiff insists that every term "has to be clearly defined in the decision or in Agency regulations." (Id.) He cites no additional authority for his proposed rule, but goes on to specify that his "argument is that the ALJ did not clarify what is meant by this term," that "a finding that the ALJ and [VE] understood the term to mean the same thing" is not supported, and

[3] Even if the Plaintiff's objections are read to include such an argument, the Plaintiff could not prevail. Courts within the Tenth Circuit have "easily rejected" arguments that an ALJ "should have utilized th[e] same terms in his RFC as are reflected in the DOT," finding that "[n]othing in the prevailing case authority or in the regulations requires that an ALJ mirror the language employed in the DOT," and that the Tenth Circuit has, at least "with regard to vision acuity, … concluded the opposite." Couch v. Berryhill, No. CIV-15-428, 2017 WL 1194344, at *3 (E.D. Okla. Mar. 13, 2017), R. & R. adopted, 2017 WL 1193998 (E.D. Okla. Mar. 30) (citing Nelson v. Colvin, 655 F. App'x 626, 630 (10th Cir. 2016)). A "magic words" standard requiring specifically defined DOT phrases is not the law. See, e.g., Travis P. v. Saul, No. 2:19-CV-00958, 2021 WL 1169656, at *6 (D. Utah Mar. 26, 2021) ("The ALJ need not use magic words."); Diaz v. Comm'r, SSA, 577 F.3d 500, 504 (3d Cir. 2009) ("The ALJ, of course, need not employ particular 'magic' words.").

that, in his view, there needs to be "an agreement on what [the term] means in each case." (Id.) "[T]here is," the Plaintiff continues, "nothing to indicate if brief refers to five minutes of interaction at a time or ten minutes," and no answer to the question about whether "superficial refer[s] to acknowledging a co-worker as they pass by, or [would also include their] actually stop[ping] and talk[ing]." (Id.)

The Plaintiff cites no authority demonstrating that this extreme level of specificity is required, particularly where, as the VE explained at the hearing, "[t]he DOT doesn't address … social interactions in the same specificity as the hypothetical," (Tr. 59, ECF No. 9), let alone by drawing the minute-by-minute distinctions the Plaintiff maintains are needed to establish a common understanding of a term. Nor does the Plaintiff explain how these fine-grained distinctions he tries to draw—e.g., five versus ten minutes of interaction—might have impacted the ALJ's decision or the VE's testimony significantly enough to create not only error, but prejudicial error. Regardless, given the record, a finding that the ALJ and VE would have shared a sufficiently similar understanding of what the term "means in [this] case" is supported, and the court has not been "left to speculate what the ALJ means." (But see ECF No. 24 at 6 (citation omitted)). To be clear, the court need not (and does not) decide whether an ALJ's use of the "brief and superficial interaction" term is permissible in every case. But here, the ALJ asked about it in the context of the Plaintiff's "past work," and the detail in the record about that work—detail that the ALJ and VE both would have known—clarified and cabined what the term meant in this case. For one thing, the VE confirmed her familiarity with the Plaintiff's "past work" in responding to the ALJ's request that the VE "describe [it]." (Id. at 57). For another, much of the detail about the Plaintiff's past work is evident in the back-and-forth the ALJ had with the VE about the Plaintiff's employability and in testimony the Plaintiff offered to the ALJ.

"In order to determine whether claimants are employable in the national and local communities, ALJs use the help of vocational experts through hypothetical questions." Pierce v. Apfel, 21 F. Supp. 2d 1274, 1279 (D. Kan. 1998). The ALJ did so here and asked the VE hypothetical questions in order to establish the Plaintiff's employability. The ALJ asked the VE, for example, whether someone with the Plaintiff's "brief and superficial interaction" limitations would be able to perform the Plaintiff's "past work." (Tr. 57–58, ECF No. 9.) The VE replied, "[n]o[,]" explaining that this was because "[t]hose jobs are too interactive." (Id. at 58). The ALJ then asked whether "such an individual" could "perform other work" and "[i]f so, [could the VE] provide several examples?" (Id.) The VE responded "[y]es[,]" then went on to list three other jobs that an individual subject to the Plaintiff's interaction limitations would be able to perform (laundry worker, stores laborer, mail clerk). (Id.) The ALJ then asked the VE another hypothetical question and instructed the VE to "assume the same limits as the first [question]," and to make a few other non-interaction assumptions as well. (Id. at 58–59). In answering, the VE noted that the "DOT doesn't … discuss the social interactions in the same specificity as [the other] hypothetical," so she had "to rely on [her] professional experience when considering those matters." (Id. at 59).

The VE was not in the dark about details of the Plaintiff's past employment when answering those questions. The transcript shows that the VE was present from the beginning of the hearing, (Tr. 36, 39, ECF No. 9), meaning that before the VE gave her testimony, she would have heard the Plaintiff's testimony, cf. Greig v. Botros, 525 F. App'x 781, 793 n.3 (10th Cir. 2013) ("The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing." (quoting Fed. R. Evid. 703)); Gorringe v. Astrue, 898 F. Supp. 2d 1220, 1226 (D. Colo. 2012)

(observing that social security hearings "should be liberal and not strict in … operation" and use "fundamentally fair" procedures (quoting Richardson v. Perales, 402 U.S. 389, 400–01 (1971))).

That testimony from the Plaintiff included the following: that in his role at a hardware store, the Plaintiff had "helped customers around the store -- talked to them about their needs, [and] helped them find product in the store," (Tr. 42–43, ECF No. 9; see also id. at 43 ("[He] primarily helped customers around the store" and "loaded and unloaded freight"); that when he worked at a video game retailer, his duties included "communicat[ing] needs of customers and get[ting] them the product that they want[ed] … [which s]ometimes [] included calling customers via phone," (id. at 43–44); and that in the latter role he "attended team meetings via phone, and worked with the store manager to supervise [his] fellow employees," (id. at 44).

This detailed testimony about the social interactions in the Plaintiff's past employment supports a finding that the ALJ and VE shared an understanding of what the "brief and superficial interaction" term meant in this case. It meant, in essence, shorter than a typical customer assistance interaction in a retail environment. (See Tr. 42–44, ECF No. 9 (discussing helping customers find and purchase products).) This meaning accords with how these terms, which even the Plaintiff agrees are "not … unusual," would normally be used. Hamadi v. Kijakazi, No. CV 20-220, 2021 WL 3772181, at *3 (D.N.M. Aug. 25, 2021) ("[An] ALJ does not have to explain that he is using terms as they are normally used … with respect to their plain meaning …."); (ECF No. 24 at 6.) Aligning with there having been a common understanding of the term in this case, at the hearing the Plaintiff's attorney did not ask questions about what this term meant or it being insufficiently defined. See Garcia v. Comm'r, SSA, 817 F. App'x 640, 649 (10th Cir. 2020) (suggesting that "to the extent [a claimant] believes the record is inadequate … his counsel could have asked additional questions at the hearing to clarify such issues");

Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir. 1997) ("[W]hen the claimant is represented by counsel at the administrative hearing … the ALJ may ordinarily require counsel to identify the issue or issues requiring further development."); (ECF No. 23 at 12; ECF No. 21 at 15–16.)

Where an ALJ has used too vague a term, including in hypothetical questions to a VE or in an RFC determination, courts within this circuit will find that an ALJ's decision is "legally deficient and not supported by substantial evidence." Williams v. Colvin, No. CIV-15-577, 2016 WL 4586042, at *3–4 (W.D. Okla. Sept. 1, 2016). But no such error occurred here. The ALJ used "brief and superficial interaction" in a context where the record indicates a common understanding of the term and that the ALJ's questioning cabined the meaning of the term.

Finally, even if the ALJ had erred in using the term, the error was harmless. The occupations identified by the VE (laundry worker, stores laborer, mail clerk) took the Plaintiff's limitations into account, including the "brief and superficial interaction" limitation. (Tr. 58, ECF No. 9.) The Plaintiff does not claim the positions require more than brief and superficial interactions, he says it is "impossible to know" if they do (and thus if they align with the Plaintiff's residual functional capacity) because "more information" was needed to define what was "meant by" the limitation. (ECF No. 15 at 14.) But as explained above, more is not needed to discern what was meant by the limitation. So, this objection is unavailing. And it is not saved by the Plaintiff's reference to Social Security Ruling 85-15 (SSR 85-15). (ECF No. 24 at 7.) The Plaintiff asserts SSR 85-15 "makes clear" that sustaining "simple work requires the ability to respond appropriately to supervision, coworkers, and usual work situations." (Id.) The record does not indicate the Plaintiff cannot be responsive in these ways, only that his ability to do so is limited. (See ECF No. 24 at 6 ("'Brief' refers to an amount of time an interaction lasts and 'superficial' indicates the quality of that interaction.").) Given the VE's accommodation of the

"brief and superficial interaction" limitation in identifying these occupations, the Plaintiff has not established that this limitation would preclude those occupations.

**CONCLUSION**

Upon full consideration of the entire record and the issues herein, the court finds that the Magistrate Judge's findings are supported by substantial evidence and the prevailing legal authority. Accordingly, the court **ORDERS** as follows:

1. The court OVERRULES the Plaintiff's objections to Judge Romero's Report and Recommendation. (ECF No. 24.)

2. The court AFFIRMS and ADOPTS Judge Romero's Report and Recommendation. (ECF No. 23.)

3. The Plaintiff's Motion for Review of Social Security Agency Action is DENIED (ECF No. 15.)

DATED this 16th day of October, 2026.

BY THE COURT:

Tena Campbell

Tena Campbell
United States District Judge